# EXHIBIT D

# WAESCHE, SHEINBAUM & O'REGAN, P.C.

111 BROADWAY
NEW YORK, NY 10006-1991

JOHN R. KEOUGH, III
RICHARD W. STONE II
JOHN R. FOSTER

TELEPHONE: 212-227-3550
FACSIMILE: 212-267-5767
212-233-8477
E-MAIL: waesche@waeschelaw.com

CODY D. CONSTABLE

FRANCIS M. O'REGAN
PETER H. GHEE
OF COUNSEL

November 22, 2006

**BY HAND**
Mr. Robert Bruno
Vice President and General Manager
WOR Radio (Buckley Broadcasting Corporation)
111 Broadway, 3rd Floor
New York, New York 10006

Re:   Edward Walsh Employment Contract

Dear Mr. Bruno:

Enclosed please find a Demand for Arbitration pursuant to the Labor Arbitration Rules of the American Arbitration Association, with a copy of the applicable arbitration clause.

Sincerely,

WAESCHE, SHEINBAUM & O'REGAN, P.C.

By: _____
Cody D. Constable

Encs.
cc: William E. Zuckerman, Esq. (by facsimile)

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

## LABOR ARBITRATION RULES
### Demand for Arbitration

*MEDIATION: Please consult the AAA regarding mediation procedures. If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box ☐*

| | |
|---|---|
| Name of Respondent ☒Employer or ☐Union<br>WOR Radio (Buckley Broadcasting Corporation) | Name of Representative (if known)<br>William E. Zuckerman, Esq. |
| Contact Person<br>Robert Bruno | Name of Firm (if applicable)<br>Kauff McClain & McGuire LLP |
| Address:<br>111 Broadway, 3rd Floor | Representative's Address:<br>950 Third Avenue, 14th Floor |
| City: New York   State: NY   Zip Code: 10006 | City: New York   State: NY   Zip Code: 10022 |
| Phone No. (212) 462-4500   Fax No. N/A | Phone No. (212) 909-0701   Fax No. (212) 909-3501 |
| Email Address: Not available | Email Address: zuckerman@kmm.com |

The named claimant, a party to an arbitration agreement dated September 1, 2003, which provides for arbitration under the Labor Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

**Nature of Grievance:**
Breach of oral contract of employment between WOR Radio (Buckley Broadcasting Corporation) and Mr. Edward Walsh

**Name of Grievant(s) (if applicable):**
Mr. Edward Walsh

**Claim or Relief Sought:**
All damages caused by the wrongful termination, including but not limited to all salary, severance and other benefits to which Mr. Walsh is entitled

**REMINDER:** You can file your case online by visiting the AAA's website at www.adr.org. Please select "AAA Webfile" from the list of side menu options. You may also wish to visit the "Labor" "Focus Area" for a complete list of our administrative services and procedures, including our Expedited Procedures.

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND (please refer to the rules for the appropriate fee) $

THE FILING PARTY REQUESTS THAT HEARINGS BE HELD AT THE FOLLOWING LOCALE: New York, New York

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association office located in New York, New York, with a request that it commence administration of the arbitration. Under the rules, you may file an answering statement within ten days after notice from the AAA.

| | |
|---|---|
| Signature (may be signed by a representative)   Date:<br>*John R. Keough III* = COC   Nov. 22, 2006 | Name of Representative<br>John R. Keough, III |
| Name of the Claiming ☐Union or ☐Employer<br>Mr. Edward Walsh | Name of Firm (if applicable)<br>Waesche, Sheinbaum & O'Regan, P.C. |
| Address (to be used in connection with this case):<br>340 East 64th Street, Apt. 20B | Representative's Address:<br>111 Broadway |
| City: New York   State: NY   Zip Code: 10021 | City: New York   State: NY   Zip Code: 10006 |
| Phone No. (212) 593-3020   Fax No. N/A | Phone No. (212) 227-3550   Fax No. (212) 267-5767 |
| Email Address: Not available | Email Address: j.keough@waeschelaw.com |

To begin proceedings, please send two copies of this Demand and the Arbitration Agreement or relevant contract language, along with the filing fee as provided for in the Rules, to the AAA. Send the original Demand to the Respondent.

AAA Customer Service can be reached at 800-778-7879

insurance, medical service and other similar service, where mutually agreed upon between the staff announcer or staff newsperson and the Company.

## ARTICLE X

## GRIEVANCE & ARBITRATION

(a) In the event there should be any controversy or dispute arising with respect to this Agreement or the interpretation or breach thereof between AFTRA and the Company, AFTRA and the Company shall promptly and in good faith attempt to settle such dispute amicably. In the event that they are unable so to do, any such controversy or dispute shall be settled by arbitration in accordance with the labor arbitration rules then obtaining of the American Arbitration Association, each party bearing half the expense, and judgment upon the award rendered may be entered in the highest court of the forum, state or federal, having jurisdiction. A demand for arbitration shall be made in writing.

The hearing shall be held on two (2) days' notice and shall be concluded within fourteen (14) days unless otherwise ordered by the arbitrator. The award of the arbitrator shall be made within seven (7) days after the close of the submission of evidence. All awards rendered by the arbitrator shall be final and binding.

113778.v7

(b) In no event may a party to this Agreement institute an arbitration proceeding over a grievance arising under this Agreement unless a demand for arbitration is filed within ninety (90) days from the date that the party has knowledge of the occurrence of the event giving rise to the dispute or with due diligence should have known of the occurrence of the event giving rise to the dispute.

(c) On the request of either AFTRA or the Company, any controversy or dispute between a staff announcer or staff newsperson and the Company arising out of or connected with this Agreement or the employment by the Company of a staff announcer or staff newsperson pursuant hereto shall be settled by arbitration pursuant to the provisions of paragraphs (a), (b) and (c) hereof except that half the expense shall be borne by AFTRA.

## ARTICLE XI

## NO DISCRIMINATION

The Company and AFTRA shall not discriminate against any applicant for employment or any staff announcer or staff newsperson because of age, race, sex, creed, color, national origin or sexual orientation. The Company shall not discriminate against any staff announcer or staff newsperson because of any claim made by him/her or submitted to arbitration by him/her or through AFTRA as herein provided, respecting the performance of this Agreement.

- 9 -

113778.v7

2. ARTIST is or shall become a member of AFTRA, subject to and in accordance with the provisions in said AFTRA contract or Codes requiring such membership and applicable law.

3. All disputes and controversies of every kind and nature arising of and in connection with this Agreement shall be determined by arbitration in accordance with the arbitration provisions of the applicable AFTRA contract or Codes.

## VIII. MISCELLANEOUS

M. ARTIST warrants and represents that ARTIST has the right and power to enter into perform this Agreement and that ARTIST has not made any prior inconsistent commitments or agreements.

N. Any notice, consent, approval or request provided for herein must be in writing and, if the same is sent by mail in a postpaid wrapper addressed to the party for whom it is intended at such party's last-known address, it shall be deemed to be given on the date when so mailed.

O. This Agreement contains the sole understanding between the parties hereto with respect to its subject matter, supersedes all previous contracts or understandings between them with respect thereto, and shall not be modified except in writing.

P. Any question as to the validity, construction or performance of this Agreement shall be governed by the laws of the State in which is located BBC's offices referred to at the beginning of this Agreement.

Q. No waiver by either party of any breach of this Agreement by the other shall be deemed to be waiver of any preceding or subsequent breach thereof.

R. This Agreement is subject to the terms and to the continuation of all broadcasting licenses issued to the Station, to all applicable federal, state and municipal laws and regulations, and to all rules, regulations and orders of the Federal Communications Commission now or hereafter in force; and notwithstanding anything to the contrary contained in this Agreement, neither party hereto shall be required to furnish any performance hereunder which would involve the violation of any such license, law, regulation, rule or order. A judicial determination of the invalidity or unenforceability of any provision of this Agreement shall not affect the remaining provisions of this Agreement which shall continue in full force and effect.

S. If ARTIST shall receive at any time during the term hereof or within sixty (60) days after the expiration or earlier termination of this agreement any offer for ARTIST's services from any other radio or television station or network within the New York Designated Marketing Area ("DMA"), as defined by Arbitron, and if ARTIST is ready and willing to accept such offer, ARTIST shall give BBC prompt written notice thereof regarding specific proposed compensation and term of engagement and BBC shall have the right of first refusal to ARTIST's services upon the compensation and engagement arrangements offered by the other station or network. BBC shall exercise the first right of refusal by giving ARTIST written notice within ninety-six (96) hours (excluding any weekend or holiday). BBC shall, if it desires, initiate renegotiation for any additional term not later than one hundred twenty (120) days before the end of the term of this Agreement.

# EXHIBIT E

# FIRST AMENDED
# NOTICE OF INTENTION TO ARBITRATE
# AND DEMAND FOR ARBITRATION

The AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, AFL-CIO, NEW YORK LOCAL ("AFTRA"), for itself and on behalf of Performer, Ed Walsh and all other similar affected members, (the "Grievant"), hereby demands arbitration of the controversy, described more fully below, between AFTRA and the Grievant on the one hand and Buckley Broadcasting Corporation, (the "Company"), on the other hand, pursuant to the arbitration and other provisions of the collective bargaining agreement known as the 2003-2007 AFTRA/Buckley Broadcasting Corporation Agreement, a copy of which is annexed hereto as Exhibit "A".

## ARBITRATION PROVISIONS

Article X of the 2003-2007 AFTRA/Buckley Broadcasting Corporation Agreement contains the Arbitration procedure.

## CONTROVERSY

Company failed to pay Grievant owed wages and/or severance pay under the provisions of the 2003-2007 AFTRA/Buckley Broadcasting Corporation Agreement and under his Personal Services Agreement.

## REMEDY REQUESTED

WHEREFORE, AFTRA, for itself and on behalf of the Grievant respectfully requests that the decision and award provide a remedy:

1. Ordering and directing the Company to make the Grievant whole by paying the required fees and compensation; and

2. Ordering and directing the Company to make the Grievant whole by paying severance and notice pay, including interest; and

3. Ordering and directing the Company to pay to the Health and Retirement Funds on all amounts due; and

4. Granting such other and further relief as the arbitrator deems just and proper under the circumstances.

**PLEASE TAKE NOTICE** that unless you apply to stay this arbitration within twenty (20) days after service of this Notice of Intention to Arbitrate and Demand for Arbitration, you shall hereafter be precluded from asserting that the parties do not have a valid agreement and/or that a party has not complied with the grievance and arbitration provisions of the Agreement, including the time limitations bar contained therein.

Dated:  New York, NY
November 30, 2006

American Federation of Television
and Radio Artists, New York Local
AFL-CIO
260 Madison Avenue
New York, N.Y. 10016
(212) 532-0800

BY: _____
Sean F. Taylor
Assistant Executive Director/House Counsel

# UNPUBLISHED DECISIONS

**1**

**Westlaw.**

Slip Copy                                                                                                                    Page 1

Slip Copy, 2006 WL 1096389 (S.D.N.Y.), 2006 A.M.C. 1784
**(Cite as: Slip Copy)**

C
Hanjin Shipping Co. Ltd. v. Union Pacific R. Co.
S.D.N.Y.,2006.

United States District Court,S.D. New York.
HANJIN SHIPPING CO. LTD., Plaintiff,
v.
UNION PACIFIC RAILROAD CO., Defendant.
**No. 05 Civ. 8476(SAS).**

April 26, 2006.

Randolph H. Donatelli, Cichanowicz, Callan, Keane, Vengrow & Textor, New York, NY, for Plaintiff.
Barry Neil Gutterman, Barry N. Gutterman & Associates, P.C., New York, NY, for Defendant.

*OPINION AND ORDER*
SCHEINDLIN, J.

I. INTRODUCTION

*1 Hanjin Shipping Co. Ltd. ("Hanjin") has moved to compel arbitration and to stay this suit pending arbitration of its claims against Union Pacific Railroad Co. ("UP"). For the following reasons, the motion to compel arbitration is granted.

II. BACKGROUND

A. The Parties

Hanjin is a corporation organized and existing under the law of the Republic of Korea, with its principal place of business in Seoul, Korea.[FN1] Hanjin is an international ocean transportation company.[FN2] It transports shipping containers over the ocean on vessels it owns or charters.[FN3] When transportation involves inland carriage, Hanjin subcontracts with inland carriers.[FN4]

FN1. *See* Complaint with Petition to Compel Arbitration ("Complaint") ¶ 1. *See also* Plaintiff's Memorandum of Law ("Pl.Mem.") at 1 (noting that Hanjin's North American headquarters are in Paramus, New Jersey).

FN2. *See* Complaint ¶ 10.

FN3. *See* Declaration of Jacob Lee, General Counsel for Hanjin ("Lee Decl.") ¶ 3.

FN4. *See id.*

UP is a Delaware corporation with its headquarters in Omaha, Nebraska.[FN5] It is a railroad that operates in interstate commerce.[FN6] Hanjin subcontracts with UP for inland carriage of cargo to destinations throughout the United States.

FN5. *See* Complaint ¶ 2.

FN6. *See* Declaration of Raymond J. Hasiak, Senior Trial Counsel for UP ("Hasiak Decl.") ¶ 3.

B. The Agreement

On August 1, 1997, Hanjin and UP entered into an Exempt Rail Transportation Agreement ("ERTA") to govern the terms of carriage of Hanjin's containers by UP.[FN7] The ERTA has been periodically continued, by addendum, for further terms and on July 1, 2002, it was continued through June 30, 2007, with an optional two year extension period.[FN8] Under the ERTA, UP agrees to provide rail transportation of loaded and empty containers between certain specified points for Hanjin.[FN9] When shipments are under the control of UP, any matters not specifically addressed by the ERTA are governed by the "rules and provisions that would have applied in absence" of the ERTA, such as UP's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                               Page 2
Slip Copy, 2006 WL 1096389 (S.D.N.Y.), 2006 A.M.C. 1784
**(Cite as: Slip Copy)**

rules circulars.[FN10] The rules circulars include the Master Intermodal Transportation Agreement ("MITA"), which was formerly known as the UP Exempt Circular 20-B, a UP publication setting forth UP's standard terms and conditions of carriage.[FN11] To the extent any provision under the rules circulars is inconsistent with the ERTA, the ERTA governs.[FN12]

> FN7. *See* ERTA ¶ 10, Ex. 1 to Lee Decl.
>
> FN8. *See id.*, First Addendum to ERTA ¶ 10, Second Addendum to ERTA ¶ 10, and Third Addendum to ERTA ¶ 10, Ex. 1 to Lee Decl.
>
> FN9. *See* ERTA at 1 (Recitals).
>
> FN10. *Id.* ¶ 11(a); Lee Decl. ¶ 14 (citing ERTA ¶¶ 11(a) and 16(b), Ex. 1 to Lee Decl.).
>
> FN11. *See* 6/1/03 MITA, Ex. 3 to Lee Decl.
>
> FN12. *See* ERTA ¶ 11(a). *See also id.* ¶ 16(b) ("*Except as otherwise set forth herein,* liability for freight loss and damage to lading while under the control [of] UP shall be governed by the applicable rules circular(s).") (emphasis added).

The parties do not dispute the applicability of the ERTA to the shipments in question. The ERTA contains an arbitration clause, providing that "[a]ny dispute arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration in New York, NY, in accordance with the Federal Arbitration Act (Title 9, U.S.Code) and the International Arbitration Rules of the American Arbitration Association."[FN13] The provision also states that "[n]o state or local law provision shall be applied to limit the scope or appropriateness of any arbitration."[FN14]

> FN13. *Id.* ¶ 19.
>
> FN14. *Id.*

Section 16(b) of the ERTA governing liability for cargo damage states: "Except as otherwise set forth herein, liability for freight loss and damage to lading while under the control [of] UP shall be governed by the applicable rules circular(s)."[FN15] Section 16(b) also notes that a written claim for cargo loss or damage arising out of a transportation under the ERTA must be filed within twelve months from when the Container is tendered to "Hanjin's agent, an adjoining carrier or to a drayman."[FN16]

> FN15. *Id.* ¶ 16(b).
>
> FN16. *Id.*

*2 The MITA is the applicable rules circular and it is silent as to the arbitrability of cargo loss or damage. However, it contains a forum selection clause which states:
All lawsuits must be filed within eighteen (18) months from the actual or in the event of loss of Shipment, from the expected date of delivery by [UP] or any Connecting Carrier. All lawsuits for freight loss or damage must be filed in a court of competent jurisdiction in Omaha, Douglas County, Nebraska.[FN17]

> FN17. MITA Item 3.3.

### C. The Events Leading to This Suit

Hanjin contracted with UP for rail transportation of several containers originating in the Far East to various destinations in the United States.[FN18] Hanjjin alleges that "some or all of the cargoes in each container" were broken into and pilfered while in UP's possession.[FN19]

> FN18. Complaint ¶ 10.
>
> FN19. *Id.* ¶¶ 12-13.

On September 27, 2005, Hanjin served an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

arbitration demand on UP pursuant to section 19 of the ERTA.[FN20] In response, UP advised Hanjin that it would not arbitrate the claims because it believed such claims were governed by the MITA rather than by the arbitration clause in the ERTA.[FN21] As a result of UP's refusal and because some of those claims were nearing the contractual deadline for bringing suit, Hanjin commenced both arbitration and this action.[FN22]

> FN20. *See* Lee Decl. ¶ 10.
>
> FN21. *See id.* ¶ 11. *See also* Union Pacific Railroad Company's Memorandum of Law in Opposition to Plaintiff's Motion to Compel Arbitration ("Opp.Mem.") at 2.
>
> FN22. *See* Lee Decl. ¶ 15. On September 26, 2005, Hanjin and UP reached an agreement that "Hanjin could satisfy any alleged obligations it might have under MITA Item 3.3 by filing suit in this Court rather than in a court in Omaha, Nebraska, and that this would be totally without prejudice to all rights and defenses of the parties including Hanjin's arbitration rights." *Id.* ¶ 16.

III. LEGAL STANDARD

The determination of whether a dispute is arbitrable under the Federal Arbitration Act ("FAA")[FN23] comprises two questions: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question ... and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement."[FN24] To find a valid agreement to arbitrate, a court must apply the " generally accepted principles of contract law."[FN25] "[A] party is bound by the provisions of a contract that [it] signs, unless [it] can show special circumstances that would relieve [it] of such obligation."[FN26]

> FN23. 9 U.S.C. § 3, et seq.
>
> FN24. *Hartford Accident & Indemnity Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir.2001) (quotation marks omitted).
>
> FN25. *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir.2004). *Accord Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir.1987).
>
> FN26. *Genesco, Inc.*, 815 F.2d at 845.

There is "a strong federal policy favoring arbitration,"[FN27] which " 'applies with particular force in international disputes.' "[FN28] The Second Circuit has emphasized that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Accordingly, [f]ederal policy requires us to construe arbitration clauses as broadly as possible."[FN29]

> FN27. *Ace Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir.2002) (quotation marks and citations omitted).
>
> FN28. *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir.2004) (quoting *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 654 (2d Cir.2004)). *Accord Chelsea Square Textiles v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 294 (2d Cir.1999) (holding that in the context of international transactions, bias in favor of arbitration is particularly strong).
>
> FN29. *Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 76 (2d Cir.1998). *Accord Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir.1995).

"[A] court should decide at the outset whether 'the arbitration agreement [is] broad or narrow.' "[FN30] "No fixed rules govern the determination of an arbitration clause's scope."[FN31] However, clauses that cover all claims or controversies arising from an agreement have generally been held to be broad.[FN32] To determine if an arbitration clause is broad

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 4
Slip Copy, 2006 WL 1096389 (S.D.N.Y.), 2006 A.M.C. 1784
**(Cite as: Slip Copy)**

"a court must determine whether, on the one hand, the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause, or if, on the other hand, arbitration was designed to play a more limited role in any future dispute." [FN33] "The existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." [FN34]

FN30. *Collins,* 58 F.3d at 20 (quoting *Prudential Lines, Inc. v. Exxon Corp.,* 704 F.2d 59, 63 (2d Cir.1983)).

FN31. *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 225 (2d Cir.2001).

FN32. *See, e.g., Collins,* 58 F.3d at 18 (" Any claim or controversy arising out of or relating to this agreement shall be settled by arbitration."); *Abram Landau Real Estate v. Bevona,* 123 F.3d 69, 71 (2d Cir.1997) ("Contract Arbitrator shall have the power to decide all differences arising between the parties to this agreement as to interpretation, application or performance of any part of this agreement."); *Louis Dreyfus Negoce,* 252 F.3d at 225 (arbitration mandated for "any dispute arising from the making, performance or termination of this Charter Party").

FN33. *Louis Dreyfus Negoce,* 252 F.3d at 224 (citation omitted).

FN34. *Bank Julius Baer & Co. v. Waxfield Ltd.,* 424 F.3d 278, 284 (2d Cir.2005).

*3 Under New York law, "a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." [FN35] "[M]atters extrinsic to the agreement may not be considered when the intent of the parties can fairly be gleaned from the face of the instrument." [FN36] In addition, " 'the entire contract must be considered, and all parts of it reconciled, if possible, in order to avoid an inconsistency.' " [FN37]

FN35. *British Int'l Ins. Co. v. Seguros la Republica, S.A.,* 342 F.3d 78, 82 (2d Cir.2003). *Accord Cruden v. Bank of New York,* 957 F.2d 961, 976 (2d Cir.1992) (citing *Breed v. Insurance Co. of North Am.,* 385 N.E.2d 1280 (N.Y.1978)).

FN36. *Cruden,* 957 F.2d at 976 (citing *Teitelbaum Holdings, Ltd. v. Gold,* 396 N.E.2d 1029 (N.Y.1979)).

FN37. *Terwilliger v. Terwilliger,* 206 F.3d 240, 245 (2d Cir.2000) (quoting *Cruden,* 957 F.2d at 976 (citing *National Conversion Corp. v. Cedar Bldg. Corp.,* 246 N.E.2d 351 (N.Y.1969)).

When interpreting an arbitration clause, "the court looks to all terms of the parties' agreement bearing on arbitration. Even though the words of the agreement's arbitration clause may be broad, its scope may be limited by language elsewhere in the agreement clearly and unambiguously negating or limiting it with respect to a matter in dispute." [FN38]

FN38. *Woodcrest Nursing Home v. Local 144, Hotel, Hosp., Nursing Home and Allied Services Union, S.E.I.U., AFL-CIO,* 788 F.2d 894, 898 (2d Cir.1986) (citing *Nolde Bros. v. Bakery & Confectionery Workers Union,* 430 U.S. 243, 254 (1977)).

When a forum selection clause conflicts with an arbitration clause, a court cannot nullify an arbitration clause " 'unless the forum selection clause specifically precludes arbitration.' " [FN39] Therefore "[w]here the parties to an arbitration agreement specifically have excepted a certain type of claim from mandatory arbitration, it is the duty of courts to enforce not only the full breadth of the arbitration clause, but its limitations as well." [FN40]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                           Page 5

Slip Copy, 2006 WL 1096389 (S.D.N.Y.), 2006 A.M.C. 1784
**(Cite as: Slip Copy)**

FN39. *Bank Julius Baer,* 424 F.3d at 284 (quoting *Personal Sec. & Safety Sys. v. Motorola,* 297 F.3d 388, 396 n.11 (5th Cir.2002)).

FN40. *State of New York v. Oneida Indian Nation of New York,* 90 F.3d 58, 62 (2d Cir.1996).

## IV. DISCUSSION

The first question is whether the ERTA contains a broad agreement to arbitrate. The "paradigm of a broad [arbitration] clause" is one that submits to arbitration "[a]ny claim or controversy arising out of or relating to th[e] agreement." [FN41] Section 19 of the ERTA provides that "[a]ny dispute arising out of or relating to this Agreement or breach thereof shall be settled by arbitration." [FN42] This is a broad arbitration clause,[FN43] and Hanjin's claims are presumptively arbitrable unless UP presents clear and unambiguous evidence that such claims are not within the agreement's scope. [FN44]

FN41. *Collins,* 58 F.3d at 20. *See also ACE Capital,* 307 F.3d at 26 (holding that the clause, "any dispute [that] shall arise between the parties ... with reference to the interpretation of this Agreement or their rights with respect to any transaction involved" was broad); *Oldroyd,* 134 F.3d at 76 ("[a]ny dispute, controversy or claim arising under or in connection with [the agreement]" was a broad arbitration clause); *Lewis Tree Serv., Inc. v. Lucent Techs., Inc.,* 239 F.Supp.2d 332, 335-36 (S.D.N.Y.2002) (holding that a clause covering "any controversy or claim ... related directly or indirectly to this Agreement" was a broad arbitration clause).

FN42. ERTA ¶ 19.

FN43. *See, e.g., Louis Dreyfus Negoce,* 252 F.3d at 226 (holding that an arbitration clause that covered "the making, performance or termination of this Charter Party" covered all disputes connected with a ship's voyage which was the subject of the Charter Party).

FN44. *See Bank Julius Baer,* 424 F.3d at 284; *Oldroyd,* 134 F.3d at 77.

UP's argument that sections 16(b) and 11(a) of the ERTA exclude issues of liability for freight loss and damage from the arbitration clause is unavailing. UP relies heavily on section 16(b), which reads in pertinent part: "[e]xcept as otherwise provided herein, liability for freight loss and damage to lading while under the control [of] UP shall be governed by the [MITA]." [FN45] UP argues that this sentence "clearly removes questions regarding liability for freight loss and damage from the ERTA. " [FN46] However, section 16(b) only applies if there is no provision addressing a point that is "otherwise provided" for in the ERTA. Thus, while "liability for freight loss and damage to lading" under the control of UP may be governed by the MITA, the existence of an arbitration clause in the ERTA trumps the forum selection clause found in the MITA by the plain language of section 16.

FN45. ERTA ¶ 16(b).

FN46. Opp. Mem. at 8.

*Second,* to the extent section 11(a) incorporates the forum selection clause in the MITA, the ERTA's arbitration clause nonetheless governs. UP relies on section 11(a), to argue that the parties "never contemplated that claims for freight loss and damage would be submitted to arbitration." [FN47] Section 11(a) of the ERTA provides that "[s]ervice and other matters not specifically addressed in this Agreement" are governed by the MITA. UP asserts that the parties intended "that all matters involving performance and obligations imposed by ERTA be subject to arbitration under Section 19 and that all matters involving cargo loss and damage be controlled by Section 11." [FN48] Section 11(a) of the ERTA clearly provides, however, that "[t]o the extent any [rules circulars] are inconsistent with the terms of [the ERTA], the terms of [the ERTA] shall govern."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2006 WL 1096389 (S.D.N.Y.), 2006 A.M.C. 1784  
**(Cite as: Slip Copy)**

Page 6

> FN47. *Id.*
>
> FN48. *Id.* at 3.

*4 Finally, even if the MITA's forum selection clause did conflict with the ERTA's arbitration clause the arbitration clause would still govern. The MITA does not mention arbitration in relation to freight loss claims. MITA Item 3.3 requires only that "[a]ll *lawsuits* for freight loss or damage must be filed in a court of competent jurisdiction in Omaha, Douglas County, Nebraska." FN49 While the forum selection clause in the MITA expresses a venue requirement for any cargo loss or damage litigation, it does not expressly forbid arbitration as an alternative form of dispute resolution. Thus, it does not conflict with the arbitration clause. But even if it did, under the rule of *Bank Julius Baer*, the arbitration agreement cannot be nullified on these grounds.FN50

> FN49. MITA Item 3.3 (emphasis added).
>
> FN50. *See Bank Julius Baer*, 424 F.3d at 284 (holding that when a forum selection clause conflicts with an arbitration clause, the arbitration clause governs unless the forum selection clause specifically forecloses arbitration.).

A court must look first to the "face of the instrument" to determine the intent of the parties.FN51 As noted, the arbitration clause contained in section 19 of the ERTA states that "[a]ny dispute arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration." FN52 There is no language in the ERTA from which I could conclude "with positive assurance" that a claim for cargo loss or damage is not within the scope of the arbitration clause.FN53 In fact, the language points to the contrary. Therefore, Hanjin's motion to compel arbitration is granted and this case is closed.

> FN51. *Cruden*, 957 F.2d at 976 (citations omitted).
>
> FN52. ERTA ¶ 19.
>
> FN53. *See Bank Julius Baer*, 424 F.3d at 284.

### V. CONCLUSION

Should the parties wish to confirm or vacate the arbitration award, they must bring a separate action, which I will accept as a related case. The Clerk of the Court is directed to close this motion [docket # 10] and this case.  
SO ORDERED:

S.D.N.Y.,2006.  
Hanjin Shipping Co. Ltd. v. Union Pacific R. Co.  
Slip Copy, 2006 WL 1096389 (S.D.N.Y.), 2006 A.M.C. 1784

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# UNPUBLISHED DECISIONS

# 2

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1

Not Reported in F.Supp.2d, 1999 WL 167715 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Sound Around, Inc. v. CE Electronic Sales Corp.
E.D.N.Y.,1999.
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.
SOUND AROUND, INC., CEO, A Division of Sound Around, Inc., and Cougar Audio, Inc. Plaintiffs,
v.
CE ELECTRONIC SALES CORP., Solomon Mayer, Dan Reich, Said Hawa, Cougar International, and C.L.T. International Inc., Defendants.
**No. 98 CV 1051.**

Jan. 11, 1999.

Max Moskowitz, Steven M. Chin, Ostrolenk, Faber, Gerb & Soffen, LLP, New York, for plaintiffs.
Aaron B. Karas, Samson Helfgott, Michael F. Sarney, Helfgott & Karas, P.C., New York, for defendants.

### MEMORANDUM AND ORDER
NICKERSON, District J.
*1 Plaintiffs brought this action for trademark infringement under the Lanham Act. On March 16, 1998 this court abstained from asserting jurisdiction over the case because the action is currently the subject of arbitration before the Rabbinical Court. The court denied plaintiffs' motion for a preliminary injunction and dismissed the case. Now plaintiffs move for reconsideration.

The standard for a motion for reconsideration is strict. *See Yankelevitz v. Cornell University,* 1997 WL 115651 at *2 (S.D.N.Y. March 14, 1997) (motion for reconsideration "is not a mechanism to allow parties to relitigate contentions and arguments already briefed, considered and decided"). Reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transportation, Inc.,* 70 F.3d 255, 257 (2d Cir.1995); *see* Local Civil Rule 6.3.

Plaintiffs argue that a preliminary injunction should have been entered against defendant Said Hawa because, they say, he is not a participant in and would not be bound by the Rabbinical proceeding.

The court already considered and rejected plaintiffs' argument in their underlying motion that a preliminary injunction should be issued against Mr. Hawa individually because he was allegedly not a party to the arbitration proceeding. In any event, Mr. Hawa is an agent or employee of signatories to the arbitration agreement and as such would be bound by that agreement. *See Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1360 (2d Cir.1993).

Even if Mr. Hawa were not an agent or employee, a Federal court may stay proceedings pending an arbitration which would likely "dispose of issues common to claims against both arbitrating and non-arbitrating defendants." *Hikers Industries, Inc. v. William Stuart Industries (Far East) Ltd.,* 640 F.Supp. 175, 178 (S.D.N.Y.1986).

Plaintiffs also say that a preliminary injunction should have been entered against defendant Cougar International, Inc., which was "apparently organized long after the Rabbinical proceeding was commenced."

Plaintiffs' argument is without basis. Cougar International, Inc. was organized on or about January 31, 1997, well before the commencement of the Rabbinical proceeding on September 29, 1997. In addition, it appears from a facsimile transmission on November 27, 1997 that plaintiffs were aware of the existence of Cougar International before the January 1998 date they claim in their papers. And defendants say they called plaintiffs before plaintiffs filed this motion to alert them to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 2
Not Reported in F.Supp.2d, 1999 WL 167715 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

the falsity of this assertion.

The court considered, but declines to grant, defendants' cross-motion for an award of sanctions against plaintiffs pursuant to Rule 11 of the Federal Rules of Civil Procedure, but the court takes a dim view of plaintiffs' inclusion of this questionable assertion in their motion papers.

*2 Plaintiffs also argue that the action should be stayed rather than dismissed. Plaintiffs' argument is unavailing. It is within a court's discretion to dismiss rather than stay a case when all of the issues raised must be submitted to arbitration. *See Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992); *Berger v. Cantor Fitzgerald Securities,* 967 F.Supp. 91, 96 (S.D.N.Y.1997).

Finally, plaintiffs say that the court should not compel arbitration of a blank arbitration agreement. This argument was already briefed and considered by the court and may not be relitigated on a motion for reconsideration.

Plaintiffs' motion for reconsideration is denied. Defendants' cross-motion for sanctions is denied.

So ordered.

E.D.N.Y.,1999.
Sound Around, Inc. v. CE Electronic Sales Corp.
Not Reported in F.Supp.2d, 1999 WL 167715 (E.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.