```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
EDWARD WALSH,                       :
                                    :
                    Plaintiff,      :
                                    :    07 CV 3729 (VM)
        -against-                   :
                                    :    DECISION AND ORDER
WOR RADIO a/k/a BUCKLEY             :
BROADCASTING COMPANY,               :
                                    :
                    Defendant.      :
------------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

Plaintiff Edward Walsh ("Walsh") brought this action against defendant WOR Radio a/k/a Buckley Broadcasting Company ("BBC") for damages, asserting a breach of contract claim against BBC for wrongful termination of employment in violation of an oral contract. BBC filed a motion pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, to dismiss the action, or in the alternative, to stay the proceeding pending arbitration.

For the reasons stated below, BBC's motion to dismiss is GRANTED.

**I.   BACKGROUND**[1]

---

[1] The following facts are taken from Walsh's submissions, including the Complaint, dated May 11, 2007, and Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss or Stay Pending Arbitration, dated August 10, 2007. Except where specifically referenced, no furhter citation to these sources will be made.

Walsh was employed by BBC as a radio program host pursuant to a written contract of employment for a period of three years beginning on September 26, 2003. Walsh contends that on or about August 10, 2006, BBC, by its general manager, Robert Bruno, entered into a new, oral contract with Walsh renewing his employment for a three-year term commencing September 25, 2006, and agreed that Walsh would be entitled to four weeks of vacation during each year of employment and would receive an annual auto allowance. BBC denies that it entered into this oral contract with Walsh. On August 25, 2006, BBC terminated Walsh's employment as of September 22, 2006.

Walsh and his union, The American Federation of Television and Radio Artists, AFL-CIO, New York Local ("AFTRA"), on his behalf commenced arbitration against BBC on Walsh's breach of contract claim. While the arbitration proceeding was still pending, Walsh commenced this action. In response, BBC moved to dismiss Walsh's claim, or in the alternative to stay litigation pending arbitration. BBC contends that, if an oral contract between the parties exists, Walsh is bound by an agreement to arbitrate any claims arising from the agreement.

## II.  DISCUSSION

BBC contends that there are two bases on which Walsh is

required to arbitrate his claim.  First, while BBC disputes the existence of the oral contract, BBC argues that if such a contract exists, the agreement incorporated all the clauses of the prior written agreement - except for the changes noted by Walsh in the Complaint - including a requirement to arbitrate. (See Written Agreement (the "Written Agreement"), dated September 22, 2003[2], attached as Ex. A to Defendant's Memorandum of Law in Support of its Motion to Dismiss.) Second, BBC contends that regardless of the terms of any oral contract, the Collective Bargaining Agreement binding both Walsh and BBC requires arbitration of the instant dispute. (See Collective Bargaining Agreement ("CBA"), dated September 1, 2003, attached as Ex. B to Defendant's Memorandum of Law in Support of its Motion to Dismiss.)

As discussed below, the Court agrees that under either of BBC's theories, the parties' dispute is subject to arbitration.

    A.    THE WRITTEN AGREEMENT

        1.    The Federal Arbitration Act

The Supreme Court has stated that arbitration agreements embodied in employment contracts are covered by the FAA. See E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002)

---

[2] The "Terms and Conditions" portion of BBC's original submission of Exhibit A was incomplete.  To replace the incomplete submission, BBC sent Walsh's prior contract, dated September 28, 2000, and indicated that the "Terms and Conditions" portions of the contracts were identical.

(citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001)).  The FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ...." Id. at 24-25.  The FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution." Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998); see also David L. Threlkeld & Co. v. Metallgesellschaft Ltd., 923 F.2d 245, 248 (2d Cir. 1991).  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)(emphasis in original).  In deference to this strong federal policy, courts must construe arbitration agreements "as broadly as possible." Oldroyd, 134 F.3d at 76; see also Collins & Aikman Prod. Co. v. Building Sys., 58 F.3d 16, 19 (2d Cir. 1995).  In this vein, the Second Circuit has held that "the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration

4

clause is not susceptible of an interpretation that [it] covers the asserted dispute." Oldroyd, 134 F.3d at 76 (citation and quotation marks omitted); WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997) (same) (citations and quotation marks omitted).

However, as a general principle, no party may be required to submit to arbitration any dispute that it has not agreed to arbitrate. See PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996) (quoting AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986)).

### 2. Terms of the Alleged Oral Contract

As noted above, BBC contends that if an oral contract exists, then by Walsh's own admission, the contract contains an arbitration clause identical to that in the Written Agreement. To support this argument, BBC refers to a letter, which was written by Walsh, dated August 14, 2006, to BBC General Manager Robert Bruno.[3] (See Letter to Robert Bruno ("Walsh Letter"), dated Aug. 14, 2006, attached as Ex. A to Defendant's Reply Brief in Support of its Motion to Dismiss.)

---

[3] As a preliminary matter, the Court may properly consider Walsh's letter, even though it was not attached to or incorporated by reference in the Complaint. For the purposes of determining the arbitrability of a dispute, a court is permitted to consider documents outside the pleadings. See BS Sun Shipping Monrovia v. Citgo Petroleum Corp., No. 06 Civ. 839, 2006 WL 2265041, at *3 (S.D.N.Y. Aug. 8, 2006) ("While it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration.") (citing Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co., 263 F.3d 26, 32-33 (2d Cir. 2001)).

The Walsh Letter requested that BBC change his new contract to reflect the increase in his vacation time, and stated that "[t]he remainder of the Agreement will be identical to that of the current Agreement." (Walsh Letter, at 1.) Additionally, Walsh's counsel, John R. Keough also stated to BBC that Walsh and Bruno had entered into an oral contract to extend the term of the Written Agreement with the only modification being an increase in Walsh's vacation time. (See Declaration of William E. Zuckerman, dated Aug. 24, 2007 at ¶ 2.)

The Written Agreement contained an arbitration clause stating that, "[a]ll disputes and controversies of every kind and nature arising of and in connection with [the Written Agreement] shall be determined by arbitration in accordance with the grievance and arbitration provisions of the applicable AFTRA collective bargaining agreement." (Written Agreement ¶ VII(3).)

Neither the Complaint, nor Walsh's opposition papers directly addresses the remaining terms of the oral contract, or dispute BBC's contention that Walsh's theory of the case relies on the oral contract incorporating the terms of the Written Agreement. BBC does not argue that the Written Agreement is binding, but rather contends that the alleged oral contract would contain an identical arbitration clause to that in the Written Agreement. However, in his opposition papers, Walsh misstates BBC's position by asserting that BBC

6

is attempting to enforce the arbitration provision of the Written Agreement.  As a result, Walsh's response is unpersuasive insofar as it merely states that the "defendant incorrectly argues that [Walsh] must arbitrate under the written agreement" because the dispute does not arise under the Written Agreement and that no claim or defense is alleged under the Written Agreement.

Given Walsh's clear statements in the Walsh Letter, and his attorney's similar statements to BBC, coupled with the ambiguity on this point in the Complaint and in Walsh's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, the Court finds that any oral contract entered into would have contained an arbitration clause identical to that of the Written Agreement.  Additionally, the instant dispute would be encompassed by the broad arbitration clause contained in the Written Agreement.

Therefore, the existence and terms of the alleged oral contract are matters to be determined by an arbitrator.

  B. <u>THE COLLECTIVE BARGAINING AGREEMENT</u>

BBC also alleges that regardless of the terms of the disputed oral contract, Walsh is required by the CBA to arbitrate any dispute arising from an employment agreement.  The Court agrees.  Side Letter 5 of the CBA provides that with regard to Program Hosts and Talent, BBC will abide by the National Codes of Fair Practice ("National Code") for the term

of the CBA.  (See CBA at 51.)  The National Code contains a grievance and arbitration procedure requiring that:

> [a]ll disputes and controversies of every kind and nature whatsoever between any Producer and AFTRA or between any Producer and any member of AFTRA, arising out of or in connection with this Code, and any contract or engagement ... in the field covered by this Code as to the existence, validity, construction, meaning, interpretation, performance, non-performance, enforcement, operation, breach, continuance, or termination of this Code and/or such contract or engagement, shall be submitted for resolution in accordance with the following grievance and arbitration procedures.

(See National Code at ¶ 60, attached as Ex. C to Defendant's Memorandum of Law in Support of its Motion to Dismiss at.) Walsh contends that (1) as a program host, he is not subject to the CBA, (2) Side Letter 5 does not impose a requirement that employees comply with the National Code, and (3) the arbitration clause in the National Code is either not applicable or too ambiguous to be enforced.

### 1.    The Labor-Management Relations Act

Federal law favors arbitration as a form of dispute resolution in the area of labor relations. See, e.g., United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596 (1960).  Therefore, any doubt that a dispute is arbitrable "must be resolved in favor of arbitrability so long as the arbitration clause in question is susceptible to an interpretation that it covers the dispute." Seabury Const. Corp. v. District Council of N.Y. and Vicinity of the United

Bhd. of Carpenters and Joiners of Amer., 461 F. Supp. 2d 193, 196 (S.D.N.Y. 2006) (citing AT&T Techs., Inc., 475 U.S. at 650); see also New York's Health and Human Serv. Union v. NYU Hosps. Ctr., 343 F.3d 117, 119 (2d Cir. 2003) ("Where the collective bargaining agreement contains an arbitration clause, there is a presumption of arbitrability.")

   2.   Applicability of the CBA to Program Hosts

Walsh contends that the CBA is not applicable unless BBC agrees that he should be considered a staff announcer rather than a program host. Walsh points to Article I(a) of the CBA which states that the CBA "applies, and is limited in its application, to staff announcers and staff newspersons." (CBA at 1.) However, Article I(d) states that "[c]ertain limited portions of [the CBA] apply to ... persons employed as program hosts and talent." (CBA at 2.) Side Letter 5 is clearly one of the provisions applicable to program hosts and talent, as the heading states "Re: Program Hosts and Talent" and the body states, "[w]ith reference to program hosts and talent employed on WOR-AM ...." (CBA at 51.)

Therefore, the Court concludes that Side Letter 5 of the CBA applies to Walsh in his capacity as a program host.

   3.   Requirements Imposed by Side Letter 5

Walsh contends that because the language of Side Letter 5 states only that "the Company shall ... abide by the terms of" the National Code, the Side Letter is applicable only to

9

BBC, and imposes no obligations on Walsh, as an AFTRA member. However, the language of Side Letter 5 must be read in conjunction with the language of the National Code, as both documents together constitute the contract as a whole. See United States v. Hamdi, 432 F.3d 115, 125 (2d Cir. 2005)("A contract must be construed as a whole and the intention of the parties is to be collected from the entire instrument and not from detached portions.")

The National Code is a document written by AFTRA that contains a blank space for which different producers may sign in order to "agree with [AFTRA]" to accept and conform to the National Code. (See National Code at 1.) Rather than sign the National Code directly, BBC incorporated it into the CBA through Side Letter 5. Given the language construction of the National Code and that of Side Letter 5, this incorporation created a contract between BBC and AFTRA that imposes requirements on both parties. The National Code contains some clauses that place obligations on producers and some that place obligations on the union. For example, AFTRA "agrees not to impose unreasonable entrance fees." (National Code at 1.) The arbitration clause in particular states that it is applicable to disputes involving producers and members of AFTRA. Combining the language of Side Letter 5 with that of the National Code, the Court finds that Side Letter 5 imposes an arbitration requirement on Walsh, as a member of AFTRA.

10

Therefore, Walsh's argument that Side Letter 5 imposes no obligation on union members to arbitrate claims is unavailing.

    4.   <u>Application of and Ambiguity in the Arbitration Clause</u>

Walsh argues that the arbitration clause in the National Code is unintelligible and ambiguous, and not applicable in the instant case as the dispute does not arise out of or in connection with the National Code.  Contrary to Walsh's assertion, the arbitration clause in the National Code clearly states that it is applicable to "[a]ll disputes and controversies of any kind and nature whatsoever ... between any producer and any member of AFTRA," not only for those arising out of the National Code, but also for those involving "any contract or engagement ... in the field covered by this Code as to the existence, validity, construction, enforcement, operation, breach, continuance, or termination of this Code and/or such contract or engagement." (National Code at ¶ 60.)

BBC is a producer and Walsh is a member of AFTRA.  The contract at issue encompasses the field covered by the National Code, and the dispute concerns the existence of that contract.  The arbitration clause applies to the instant case, and is neither unintelligible nor ambiguous.  As previously stated, even if any ambiguity existed, federal law would require resolving it in favor of arbitration.

In sum, the arbitration clause contained in the National

11

Code is incorporated into the CBA that covers Walsh as a program host, and compels arbitration in the instant case.

### IV. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion of defendant WOR Radio a/k/a Buckley Broadcasting Company (Docket No. 5) to dismiss this action is GRANTED.

The Clerk of Court is directed to close this case, subject to its being reopened for the purpose of any additional action necessary following the arbitration proceedings referred to above.

**SO ORDERED.**

Dated:    NEW YORK, NEW YORK
          24 January 2008

                                    _____
                                        Victor Marrero
                                           U.S.D.J.