John R. Keough, III (JK 6013)
Cody D. Constable (CC 6659)
**WAESCHE, SHEINBAUM & O'REGAN, P.C.**
Attorneys for Plaintiff
111 Broadway, 4th Floor
New York, New York  10006
(212) 227-3550

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X         ECF CASE
EDWARD WALSH,

                Plaintiff,                        07 Civ.  3729 (VM)(HP)

    -against-

WOR RADIO, a/k/a BUCKLEY BROADCASTING
COMPANY,

                Defendant.
------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO RECONSIDER JANUARY 24 OPINION AND ORDER AND JUDGMENT DATED JANUARY 30

Plaintiff Edward Walsh, by his undersigned attorneys, respectfully submits this memorandum of law in support of his motion to reconsider the Court's Opinion and Order of January 24, 2008 ("Opinion") and Judgment dated January 30, 2008, pursuant to Rules 59(e) and 60(b)(1) of the Federal Rules of Civil Procedure and Local Civil Rule 6.3.

Four grounds support reconsideration of the January 24 Opinion:

<u>First</u>, the Opinion overlooked that a factual issue exists whether an agreement to arbitrate existed between the parties.  Defendant failed to produce an arbitration clause in the alleged terms and conditions attached to the parties' written agreement dated September 22, 2003

("Written Agreement"). If the oral contract had the same terms, then a factual issue arises of whether the defendant's alleged Written Agreement contained a written arbitration clause in the attached terms and conditions. The court determined that the alleged clause was missing from the evidence in the record, conducted an ex parte dialogue with defendant's counsel on the topic, and relied on representations by defendant's counsel that the clause was included in the 2003 agreement (even though they could not produce a copy of it and instead produced a clause from terms and conditions attached to an earlier agreement). In doing so, the Court overlooked that no written arbitration agreement exists. At a minimum, consideration of these facts demonstrates that discovery is needed on this factual issue.

Second, the Opinion overlooked that the oral contract did not extend the terms of the prior contract. The Court cites to the declaration of counsel for defendant to support its conclusion that the oral contract was an extension of the Written Agreement. However, the terms agreed upon in the Written Agreement are *not* the subject of the instant dispute.

Third, the Court overlooked that it must find a *written agreement* to arbitrate under the Federal Arbitration Act. The oral contract does not contain a written arbitration clause. Further, the Court cannot find that the oral contract contained a valid agreement to arbitrate without finding that the oral contract exists.

Fourth, the Court overlooked that plaintiff cannot be found to be employed as program host under the Collective Bargaining Agreement ("CBA") unless the Court finds that plaintiff was employed as a program host under the oral contract.

Local Rule 6.3 provides that a motion for reconsideration should be granted where (1) "the Court has overlooked factual matters or controlling precedent that were presented to it on the underlying motion," and (2) such facts, had they been considered, would change the Court's

decision. *In re WorldCom, Inc. Sec. Litig.*, 308 F.Supp.2d 214, 224 (S.D.N.Y. 2004). A court abuses its discretion when it lets stand an error of law or a clearly erroneous factual finding brought to its attention in a timely manner. *RJE Corp. v. Northville Industries Corp.*, 329 F.3d 310, 316 (2d Cir. 2003) (citing *Monegasque de Reassurances S.A.M. v. NAK Naftogaz of Ukraine,* 311 F.3d 488, 498 (2d Cir. 2002)); *Cruz v. Barnhart*, No. 04 Civ. 9746, 2006 WL 547681, at *2 (S.D.N.Y. March 7, 2006).

### I.

### THE COURT RELIED ON AN EX PARTE COMMUNICATION WITH DEFENDANT'S COUNSEL, NOT ON THE EVIDENCE; THE EVIDENCE SHOWS NO AGREEMENT TO ARBITRATE

The Court overlooked the defendant's new evidence refuting their allegation of an agreement to arbitrate. The new evidence was submitted ex parte. The Court asked defendant's counsel about the alleged arbitration clause, which was not part of the Terms and Conditions submitted with defendant's Memorandum of Law in Support of its Motion to Dismiss as Exhibit A. Defendants replied that there is no copy of an arbitration clause in the Written Agreement; and that they did not have a copy.

Despite not having the 2003 Terms and Conditions, defendant's counsel in an ex parte telephone call with the Court represented that the earlier agreement in 2000 had Terms and Conditions that were the same as the Terms and Conditions to the Written Agreement. Yet the Court and the defendant overlooked the obvious: if defendant did not have the 2003 Terms and Conditions, they could not know if the same arbitration clause existed. In fact, it was *not* attached.

Since no full Terms and Conditions was attached containing an arbitration clause, the evidence is that there was *no* written arbitration clause in defendant's alleged Written

3

Agreement, and thus none in the oral contract.  Defendant's counsel and the Court's clerk conducted these communications ex parte.  (*See* Individual Practices of Judge Marrero applicable to communications with chambers)  The Court then wrongly relied on the communications in finding an arbitration clause.  This factual issue at least requires discovery.

## II.

### THE 2003 WRITTEN AGREEMENT WAS NOT EXTENDED; A NEW ORAL CONTRACT WAS AGREED

The Court overlooked the undisputed fact that defendant disputes the existence of the oral agreement and thus any agreement to arbitrate pursuant to it.  Instead, the Court based its conclusion on finding that the oral contract was an "extension" of the Written Agreement dated September 22, 2003.   However, the terms agreed upon in the Written Agreement are *not* the subject of the instant dispute.

The oral contract was made based upon terms of the Written Agreement, but the Written Agreement expired by its own terms in September 2006.  There is no allegation it was "extended."  Therefore, the Court misplaced reliance on the allegation by defendant's counsel in a lawyer's reply declaration that Walsh's counsel stated that Walsh had entered into an oral contract "to extend" the term of the Written Agreement.  (Opinion at 2, citing Declaration of William E. Zuckerman, dated Aug. 24, 2007 at ¶2)

Because defendant contests that a new oral contract had been agreed, the Court cannot find that the parties' agreed to arbitrate in the oral contract without concluding that the oral contract exists.

Case 1:07-cv-03729-VM    Document 19    Filed 02/14/2008    Page 5 of 8

### III.

### THE COURT DOES NOT FIND A
### WRITTEN ARBITRATION AGREEMENT HERE

The Court correctly noted that the "FAA creates a 'body of federal substantive law of arbitrability, *applicable to any arbitration agreement within coverage of the Act.*'" (Opinion at 4, quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)) (emphasis added)  However, the Court overlooked that it may not refer a case to arbitration under the Federal Arbitration Act before it finds that the parties executed a written arbitration agreement applicable to the issue involved:

> If any suit or proceeding be brought in any of the courts of the United States *upon any issue referable to arbitration under an agreement in writing for such arbitration*, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

The Act further provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a *written agreement* for arbitration may petition [the court] . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and *upon being satisfied that the making of the agreement for arbitration . . . is not in issue*, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . *If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof*.

9 U.S.C. § 4 (emphasis added).

5

Under the express terms of the Act, the instant dispute is not referable to arbitration because (a) defendant fails to allege or show that the oral contract is an "agreement in writing for such arbitration," and (b) the existence of the oral contract is in issue, and thus the "making of the arbitration agreement" contained in the oral contract is necessarily in issue. 9 U.S.C. §§ 3-4.

### A.   The oral contract does not contain a written arbitration agreement.

Plaintiff has argued that the Federal Arbitration Act requires a written arbitration agreement which is lacking here. (Plaintiff's Memorandum in Opposition at 3) The Court overlooked that no *relevant* written arbitration agreement exists.

The Court correctly noted that "the dispute does not arise under the Written Agreement and that no claim or defense is alleged under the Written Agreement." (Opinion at 7) However, despite finding that the "Written Agreement" does not apply, the Court found that "the instant dispute would be encompassed by the broad arbitration clause contained in the Written Agreement."

### B.   The parties' oral contract is in issue; therefore, the "making of the arbitration agreement" contained in the oral contract is necessarily in issue.

The Court overlooked that "'[t]he role of the courts in reviewing matters subject to arbitration . . . is limited to determining two issues: (i) *whether a valid agreement or obligation to arbitrate exists*, and (ii) whether one party to the agreement has failed, neglected or refused to arbitrate, in whole or in part.'" (Defendant's Memo of Law at 7, quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996)) (emphasis added)

The Court overlooked that no legal authority supports enforcing an alleged arbitration clause contained in the contested oral contract. The Court found "that any oral contract entered into would have contained an arbitration clause identical to that of the Written Agreement." (Opinion at 7) However, defendant contests that it agreed to the oral contract containing the

6

arbitration clause; defendant cannot select which terms to enforce in a contract whose very existence it denies. The federal policy favoring arbitration is limited by the requirement that the Court must find that the making of an agreement to arbitrate is not in issue. 9 U.S.C. § 4.

The Federal Arbitration Act requires the Court to determine whether a valid agreement to arbitrate *exists*. Here, such an agreement is an alleged *term* of the oral contract. The Court thus overlooked controlling law in holding that "the *existence and terms* of the alleged oral agreement are matters to be determined by an arbitrator." (Opinion at 7) The validity of the arbitration term in the Oral Contract is a matter to be determined by the Court; under the instant facts, such a term cannot be found to exist without a finding that the contract exists.

### IV.

### THE COLLECTIVE BARGAINING AGREEMENT CANNOT COMPEL ARBITRATION WHERE DEFENDANT CONTESTS THE EXISTENCE OF THE ORAL CONTRACT

Relying on the Collective Bargaining Agreement ("CBA"), defendant asserts that Walsh was a program host, and pursuant to that agreement, he is compelled to arbitrate. For essentially the same reasons as stated above, defendant cannot argue on the one hand that there was no agreement for plaintiff's employment from September 2006 through September 2009, and argue on the other hand that he was in fact employed as a program host. Plaintiff was a program host (and staff announcer) pursuant to the Written Agreement that expired in 2006, but he is seeking to enforce a new oral contract. The Written Agreement has no application to plaintiff's employment arising out of the oral contract from September 2006 to September 2009. The Court overlooked that fact in finding that plaintiff was a program host under the oral contract without finding that there was in fact such a contract. In short, the oral contract for plaintiff's

employment as a program host must be found to exist for plaintiff to be considered a "program host" as a subset within the staff announcers covered under the CBA.

As the Court noted, "Side Letter 5 of the CBA provides that *with regard to Program Hosts and Talent*, BBC will abide by the National Codes of Fair Practice ("National Code") . . . ." (Opinion at 7) (emphasis added)  The Court further noted that the CBA at "Article I(d) states that '[c]ertain limited portions of [the CBA] apply to . . . *persons employed as program hosts and talent*.'" (Opinion at 9, quoting CBA at 2) (emphasis added)  The Court found that because plaintiff is a program host, Side Letter 5 applies, and therefore the arbitration procedure of the National Code applies.  (Opinion at 9-10)   However, by the express terms of the CBA, Side Letter 5 only applies to persons "employed" – a fact which defendant denies and puts in issue.

## CONCLUSION

For the reasons set forth above, plaintiff respectfully requests that the Court reconsider the Opinion, Order, and Judgment dismissing plaintiff's claims.

Dated: New York, New York
       February 13, 2008

WAESCHE, SHEINBAUM & O'REGAN, P.C.
Attorneys for Plaintiff
Edward Walsh

By: _____/s_____
   John R. Keough, III (JK 6013)
   111 Broadway, 4th Floor
   New York, New York 10006
   (212) 227-3550

TO:   William E. Zuckerman (WEZ 2700)
      J. Patrick Butler (JPB 2424)
      KAUFF, MCCLAIN & MCGUIRE, LLP
      Attorneys for Defendants
      950 Third Avenue, 14th Floor
      New York, New York 10022
      (212) 644-1010